RECEIVED
WILLIAM T. WALSH, CLERK

**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT** 2005 MAY -3  A 9:49
**DISTRICT OF NEW JERSEY**

UNITED STATES
DISTRICT COURT

```
JUAN MANUEL GONZALEZ-CIFUENTES,  :
                                 :
               Plaintiff,        :      Civil No. 04-4855 (WHW)
                                 :
        v.                       :
                                 :           O P I N I O N
U.S. DEPARTMENT OF HOMELAND      :
SECURITY, et al.,                :
                                 :
               Defendants.       :
_____:
```

**APPEARANCES:**

> JUAN MANUEL GONZALEZ-CIFUENTES, Plaintiff, pro se
> A-13-347-979
> Bergen County Jail
> 160 South River Street
> Hackensack, New Jersey 07601

**WALLS**, District Judge

Plaintiff, Juan Manuel Gonzalez-Cifuentes, confined at the Bergen County Jail in Hackensack, New Jersey, at the time this action was submitted for filing, seeks to bring this action in forma pauperis pursuant to 28 U.S.C. § 1915.[1]  Based on plaintiff 's affidavit of indigence, the Court grants the application to proceed in forma pauperis and directs the Clerk of the Court to file the Complaint without pre-payment of the filing fee.

Having reviewed the Complaint, and plaintiff's amended Complaint submitted on or about February 28, 2005, to identify

cognizable claims pursuant to 28 U.S.C. § 1915(e)(2), the Court concludes that the Complaint should proceed in part.

## I. BACKGROUND

Plaintiff is an immigration detainee presently confined at the Bergen County Jail. He brings this civil rights action against the following defendants: the United States Department of Homeland Security ("DHS"); the Bureau of Immigration and Customs Enforcement ("BICE"); BICE Deportation Officer Diaz; Wanda Royall, Assistant Chief of the BICE; Joel G. Trella, Sheriff of Bergen County; Bergen County Jail Corrections Officer ("C.O.") B. Ciliento; Bergen County Jail Lieutenant Hook; Sergeant Ryan; and John Duffy, Warden at the Bergen County Jail. (Complaint, Caption, ¶¶ 4-12). The amended Complaint adds the following defendants: Edward J. McElroy, BICE District Director; Greg Kendrick, BICE Field Office Director; John P. Carbone, BICE Field Office Director; Mark Stokes, BICE Assistant Chief; Wilfredo Diaz, BICE Deportation Officer; BICE Lieutenant T. Boyce; Jerry Speziale, Passaic County Sheriff; and Charles Meyer, Warden of the Passaic County Jail. (Amended Complaint, Caption, ¶¶ 6-14). The following factual allegations are taken from the Complaint and Amended Complaint and are accepted as true for purposes of this review.

On January 15, 2004, at about 9:30 p.m., plaintiff was sitting at a table in the all-purpose area of housing unit S-8 at

the Bergen County Jail, when an alarm rang and several corrections officers ran into the area. (Compl., ¶¶ 17-18).  The detainees were ordered to lock-up in their cells.  One of the officers, defendant C.O. Ciliento, yelled at plaintiff to sit on his bunk, and plaintiff complied.  Ciliento returned to the cell and began screaming obscenities and racial slurs at plaintiff.  Ciliento also threatened plaintiff with physical harm and punched plaintiff in the side of plaintiff's head.  (Compl., ¶¶ 20-26).

After Ciliento and the other corrections officer left the housing unit, plaintiff asked to go to the infirmary.  He was examined by a nurse, who told him a physician would see him the following day.  Plaintiff was examined by the facility doctor on January 16, 2004, and was treated for abrasions and contusions to his face and neck.  He was prescribed pain medication for several days, and complains that he suffered "excruciating" pain with difficulty chewing and swallowing food for several days. (Compl., ¶¶ 27-31).

After the assault, plaintiff requested a grievance form, but was told that his unit did not have any such forms.  He wrote a grievance on the back of another form and also called his family to have them report the assault incident to the BICE and the Bergen County Jail.  Plaintiff's sister-in-law reported the assault, and on January 21, 2004, plaintiff was interviewed by defendant Hook in the jail chapel.  Hook gave plaintiff a

grievance form to complete. While plaintiff was filling in the form, Deportation Officer Diaz and two other BICE officers arrived to take plaintiff's sworn statement about the incident. Plaintiff was told that an investigation would be conducted. Months afterward, plaintiff had not heard anything about his grievance and the investigation. (Compl., ¶¶ 32-44).

On or about June 18, 2004, plaintiff sent a certified letter to Sheriff Trella complaining about the Bergen County Jail grievance system and about the incident involving defendant Ciliento. Plaintiff alleges that the defendants entered into a conspiracy to cover-up the assault in violation of his constitutional rights to seek redress. (Compl., ¶¶ 45-47).

In his amended Complaint, plaintiff adds the following allegations. On October 21, 2003, plaintiff was detained by BICE agents and placed in the Passaic County Jail pending removal proceedings. Upon admission, he was given a Passaic County Jail Handbook, which plaintiff contends was in conflict with the standards specified by the Manual, a detention operations manual to be followed by all contract detention facilities.[2] For instance, plaintiff did not receive t-shirts, underwear, socks, a pillow, shampoo and skin lotion as required by the Manual. (Amended Compl., ¶¶ 24-32).

Plaintiff also complains about the conditions of his confinement at the Passaic County Jail. He claims that the

immigration detainee dormitory is overcrowded. The detainees have only three tables to eat their food, forcing many of them to eat their meals in their cells. The dining tables are also placed in close proximity to the toilets and urinals. He further alleges general unsanitary conditions. The toilets and urinals are not adequately cleaned. The dormitory is infested with roaches and vermin. The ceilings leak water and falling plaster.

Plaintiff also alleges that he was denied a diabetic diet, and was subjected to terrorization and intimidation by the jail staff who used attack dogs to search the detainees' cells. Plaintiff did not receive dental care, eye and other exams to monitor the progression of his diabetes. He and other detainees suffered from conjunctivitis due to the filthy living conditions. Finally, plaintiff alleges that the jail law library did not have the legal books and materials required by the Manual, and that only five computers were accessible and they did not have access to the forms and statutes needed by immigration detainees. Plaintiff was detained at Passaic County Jail from October 21, 2003 to January 9, 2004 and from June 29, 2004 to August 25, 2004. He states that he filed grievances about the living conditions. (Am. Compl., ¶¶ 29-61).

Plaintiff also complains that he did not receive the necessary hygiene products and a pillow when he was transferred to the Bergen County Jail on January 9, 2004. He was not given a

diabetic diet, and did not receive dental care or eye exams.  The law library did not have the necessary law books and materials and he was charged 10 cents per copy even though the Manual indicates that photocopies of legal documents are to be provided to immigration detainees without payment.  Further, plaintiff's cell was searched without justification, his legal mail was returned to sender without reason on three occasions, and he was told to buy hygiene products and laundry detergent from the commissary rather than have the jail provide them to him as stated in the Manual.

Plaintiff complained about these conditions to visiting BICE Deportation officers, but they declined to do anything unless it related to immigration concerns.  On December 6, 2004, plaintiff personally handed grievances to defendant Boyce about the lack of dental and medical care, the failure to pay him one dollar a day, and the jail's failure to follow the Manual.  A month later, when plaintiff asked Boyce about his grievances, Boyce became belligerent and verbally abused him.  (Am. Compl., ¶¶ 97-115).

Plaintiff seeks both punitive and compensatory damages in excess of $1 million.  (Compl. and Am. Compl., "Prayer for Relief ").

## II.   **STANDARDS FOR A SUA SPONTE DISMISSAL**

The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails

to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief, where the plaintiff is proceeding in forma pauperis.  28 U.S.C. § 1915(e)(2)(B).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must " accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions."  Id.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).  The standard for evaluating whether a complaint is "frivolous" is an objective one.  Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Haines, 404 U.S. at 521 (quoting Conley v.

Gibson, 355 U.S. 41, 45-46 (1957)); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981).

Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34 (1992); Alston v. Parker, 363 F.3d 229 (3d Cir. 2004)(complaint that satisfied notice pleading requirement that it contain short, plain statement of the claim, but lacked sufficient detail to function as a guide to discovery, was not required to be dismissed for failure to state a claim; district court should permit a curative amendment before dismissing a complaint, unless an amendment would be futile or inequitable); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

### III.   SECTION 1983 and BIVENS LIABILITY

Plaintiff brings this action pursuant to 42 U.S.C. §§ 1983, 1985 alleging violations of his constitutional rights under the Fifth and Fourteenth Amendments.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

Here, plaintiff's civil rights claims against the state officials, Sheriff Trella, Warden Duffy, Sheriff Speziale, Warden Meyer, and Corrections Officers Ciliento, Hook, and Ryan, would fall under § 1983.  However, plaintiff's claims against the federal defendants: the DHS, the BICE, and the BICE officials, District Director McElroy, Field Office Directors Kendrick and Carbone, Assistant Chiefs Royall and Stokes, and deportation

officers Diaz and Boyce, are not cognizable under § 1983.   The
claims against these federal defendants would be governed under
Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics
, 403 U.S. 388, 389 (1971).

In Bivens, the Supreme Court held that one is entitled to
recover monetary damages for injuries suffered as a result of
federal officials' violations of the Fourth Amendment.   In doing
so, the Supreme Court created a new tort as it applied to federal
officers, and a federal counterpart to the remedy created by 42
U.S.C. § 1983.[3]   The Supreme Court has also implied Bivens
damages remedies directly under the Eighth Amendment, see Carlson
v. Green, 446 U.S. 14 (1980), and the Fifth Amendment, see Davis
v. Passman, 442 U.S. 228 (1979).   But "the absence of statutory
relief for a constitutional violation does not necessarily mean
that courts should create a damages remedy against the officer
responsible for the violation." Schreiber v. Mastrogiovanni, 214
F.3d 148, 152 (3d Cir. 2000) (citing Schweiker v. Chilicky, 487
U.S. 412 (1988)).

In order to state a claim under Bivens, a claimant must show
(1) a deprivation of a right secured by the Constitution and laws
of the United States; and (2) that the deprivation of the right
was caused by an official acting under color of federal law.   See
Mahoney v. Nat'l Org. For Women, 681 F. Supp. 129, 132 (D. Conn.
1987)(citing Flagg Brothers, Inc. v. Brooks, 436 U.S. 149, 155-56

(1978)).

The United States has sovereign immunity except where it consents to be sued. United States v. Mitchell, 463 U.S. 206, 212 (1983). In the absence of such a waiver of immunity, plaintiff cannot proceed in an action for damages against the United States or an agency of the federal government for alleged deprivation of a constitutional right, see FDIC v. Meyer, 510 U.S. 471, 484-87 (1994), or against any of the individual defendants in their official capacities, see Kentucky v. Graham, 473 U.S. 159, 166 (1985) (a suit against a government officer in his or her official capacity is a suit against the government). Plaintiff cites no authority, and the Court has located no such authority, to suggest that the United States has waived its sovereign immunity with respect to the sort of claim for damages that plaintiff seeks to assert against the DHS and the BICE. Therefore, plaintiff's Bivens' claim against these defendants in their official capacities must be dismissed.

### IV.   **SUPERVISOR LIABILITY**

Local government units and supervisors typically are not liable under § 1983 solely on a theory of respondeat superior. See City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v. Dep't of Soc. Servs. Of City of New York, 436 U.S. 658, 690-91 (1978)(municipal liability attaches only "when execution of a government's policy or custom, whether made by its

lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of). "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of <u>respondeat</u> <u>superior</u>.  Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."  <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted).  <u>Accord</u> <u>Robinson v. City of Pittsburgh</u>, 120 F.3d 1286, 1293-96 (3d Cir. 1997); <u>Baker v. Monroe Twp.</u>, 50 F.3d 1186, 1190-91 (3d Cir. 1995).

A § 1983 action brought against a person in his or her official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent."  <u>Monell</u>, 436 U.S. at 690 n.55.  "[I]n an official-capacity action, ... a governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation; thus, in an official capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law."  <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985) (internal quotation marks and citations omitted).

Here, plaintiff asserts the personal involvement, knowledge and acquiescence of the supervisory officials, namely, the BICE officials, Sheriff Trella, Warden Duffy, Sheriff Speziale, and

Warden Meyer, either through allegations of actual participation and personal direction, or of actual knowledge and acquiescence of a policy, plan or procedure.  See Rode, 845 F.2d at 1207.  His claims against these defendants are not predicated solely on the basis of supervisor liability.  Accordingly, the Court will examine the various allegations asserted by plaintiff to determine if he states cognizable claims to withstand summary dismissal.

## IV.  ANALYSIS

Plaintiff alleges the following claims: (1) denial of medical care; (2) excessive force; (3) verbal racial harassment; (4) denial of access to the courts; (5) unconstitutional conditions of confinement; (6) lack of a grievance procedure; (7) unlawful searches; (8) interference with the mail; (9) denial of equal protection; (10) failure to train and supervise; and (11) a state law claim of assault and battery.

A.  Denial of Medical Care Claim

Plaintiff is an immigration detainee now and at the time of the alleged incidents.  As a person detained for deportation, plaintiff's status is equivalent to a pretrial detainee, whose constitutional claims are considered under the due process clause (under the Fifth and/or Fourteenth Amendments) instead of the Eighth Amendment.  See Hubbard v. Taylor, 399 F.3d 150, 158 (3d Cir. 2005); See also Edwards v. Johnson, 209 F.3d 772, 778 (5th

Cir. 2000)(*citing* Bell v. Wolfish, 441 U.S. 520, 535 n.16
(1979)); Despaigne v. Crolew, 89 F. Supp.2d 582, 585 (E.D.Pa.
2000).

In City of Revere v. Massachusetts General Hospital, 463
U.S. 239 (1983), the Supreme Court held that, for pretrial
detainees, the Due Process Clause of the Fourteenth Amendment,
rather than the Eighth Amendment, controls the issue of whether
prison officials must provide medical care to those confined in
jail awaiting trial.  463 U.S. at 243-45.  See also Fuentes v.
Wagner, 206 F.3d 335, 341 n.9 (3d Cir.), cert. denied, 531 U.S.
821 (2000); Monmouth County Correctional Institutional Inmates v.
Lanzaro, 834 F.2d 326, 346 n.31 (3d Cir. 1987), cert. denied, 486
U.S. 1006 (1988).  However, the Third Circuit has held that the "
deliberate indifference" standard employed in Eighth Amendment
cases also applies to pretrial detainees under the Fourteenth
Amendment.  See Simmons v. City of Philadelphia, 947 F.2d 1042,
1067 (3d Cir. 1991), cert. denied, 503 U.S. 985 (1992); Brown v.
Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990); Taylor
v. Plousis, 101 F. Supp.2d 255, 262 n.3 (D.N.J. 2000).
Accordingly, since the Fourteenth Amendment in this context
incorporates the protections of the Eighth Amendment, the Court
will apply the standards of both the Eighth (deliberate
indifference) and Fourteenth (due process) Amendments in
analyzing plaintiff's denial of medical care claim.  See Simmons,

947 F.2d at 1067 (the rights of a detainee are at least as great as those of a convicted prisoner).

The Eighth Amendment's proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. Estelle v. Gamble, 429 U.S. 97, 103-04 (1976).  In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must satisfy an objective component and a subjective component.  He must allege:  (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need.  Id. at 106.

When pleading an Eighth Amendment claim for denial of medical care, it is crucial for a prisoner to show that his medical need was serious.  "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'"  Hudson v. McMillian, 503 U.S. 1, 9 (1992).  See also Boring v. Kozakiewicz, 833 F.2d 468, 473 (3d Cir. 1987)(due process clause does not require that pretrial detainees receive hospital care for minor injuries), cert. denied, 485 U.S. 991 (1988).  A medical need is serious where it has been diagnosed by a physician as requiring treatment, is "so obvious that a lay person would recognize necessity for doctor's attention," or "where denial or delay

causes an inmate to suffer a life-long handicap or permanent loss." Lanzaro, 834 F.2d at 347. When evaluating the first or objective element under Estelle, whether a plaintiff's medical need is serious, "a court should consider such factors as the severity of the medical problems, the potential for harm if the medical care is denied or delayed and whether any such harm actually resulted from the lack of medical attention." Maldonado v. Terhune, 28 F. Supp.2d 284, 289 (D.N.J. 1998).

Here, plaintiff alleges that he sustained abrasions and contusions to his head and neck as a result of a physical attack by CO Ciliento. He also states that he suffered "excruciating" pain when he chewed and swallowed, but was only prescribed pain medication for several days. However, plaintiff does not allege that he suffered any significant or permanent effects as a result of his injuries. On these facts, plaintiff does not establish a serious medical need that required more medical attention than he admittedly received, a necessary precondition to triggering the defendants' obligation to provide plaintiff with care.

It also does not appear from the allegations in the Complaint that plaintiff can satisfy the second element of the Estelle test. This requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need. "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to

reckless disregard of a known risk of harm.  Farmer v. Brennan,
511 U.S. 825, 837-38 (1994).  Furthermore, a prisoner's
subjective dissatisfaction with his medical care does not in
itself indicate deliberate indifference.  Andrews v. Camden
County, 95 F. Supp.2d 217, 228 (D.N.J. 2000); Peterson v. Davis,
551 F. Supp. 137, 145 (D. Md. 1982), aff'd, 729 F.2d 1453 (4th
Cir. 1984).  Similarly, "mere disagreements over medical judgment
do not state Eighth Amendment claims."  White v. Napoleon, 897
F.2d 103, 110 (3d Cir. 1990).  "Courts will disavow any attempt
to second-guess the propriety or adequacy of a particular course
of treatment ... [which] remains a question of sound professional
judgment."  Inmates of Allegheny County Jail v. Pierce, 612 F.2d
754, 762 (3d Cir. 1979) (internal quotation and citation
omitted).  Even if a doctor's judgment concerning the proper
course of a prisoner's treatment ultimately is shown to be
mistaken, at most what would be proved is medical malpractice and
not a constitutional violation.  Estelle, 429 U.S. at 105-06;
White, 897 F.3d at 110.

     "Where prison authorities deny reasonable requests for
medical treatment, however, and such denial exposes the inmate '
to undue suffering or the threat of tangible residual injury,'
deliberate indifference is manifest.  Similarly, where 'knowledge
of the need for medical care [is accompanied by the] ...
intentional refusal to provide that care,' the deliberate

indifference standard has been met.  ...  Finally, deliberate indifference is demonstrated '[w]hen ... prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment." Lanzaro, 834 F.2d at 346 (citations omitted).

Here, plaintiff admits that he received medical treatment and pain medication for his injuries.  He does not allege any deliberate refusal by defendants to provide medical care for his injuries.  Therefore, the denial of medical care claim will be dismissed for failure to state a claim.

B.  Excessive Force Claim

Plaintiff next alleges that defendant C.O. Ciliento used excessive force by punching plaintiff in the head without provocation on January 15, 2004.  Excessive force cases fall into three categories:  (1) those involving the use of force to effectuate an arrest; (2) those against a person in police custody and/or pretrial detention; and (3) those involving the use of force against a convicted person.  Graham v. Connor, 490 U.S. 386, 394 (1989).  The Fourth Amendment standard is applied to those cases specifically directed to the method of arrest and seizure.  Custody and detention cases are subject to the Fourteenth Amendment substantive due process analysis; and cases involving the use of force against convicted individuals are

examined under the Eighth Amendment's proscription against cruel and unusual punishment.  Id. at 392-394.  As an immigration detainee at the time of the incident, plaintiff's excessive force claim is examined under the Fourteenth Amendment's substantive due process standard.

"A detainee may not be punished prior to an adjudication of guilt in accordance with due process of law."  Bell v. Wolfish, 441 U.S. 520, 535 (1979).  However, there exists a minimum degree of "punishment" which must be exceeded before a constitutional violation may be found; "de minimis" punishment does not offend the Constitution.  Id. at 539 n. 21.

In Bell v. Wolfish, the Supreme Court set forth the standard to be applied in analyzing whether a detainee has been deprived of liberty without due process:

> In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee.  For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law. ...
>
> Not every disability imposed during pretrial detention amounts to "punishment" in the constitutional sense, however.  Once the government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention. ...
>
> A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose.  Absent a showing of an expressed intent to punish on the part of detention facility officials, that

> determination generally will turn on "whether an
> alternative purpose to which [the restriction] may
> rationally be connected is assignable for it, and
> whether it appears excessive in relation to the
> alternative purpose assigned [to it]." Thus, if a
> particular condition or restriction of pretrial
> detention is reasonably related to a legitimate
> governmental objective, it does not, without more,
> amount to "punishment." Conversely, if a restriction
> or condition is not reasonably related to a legitimate
> goal--if it is arbitrary or purposeless--a court
> permissibly may infer that the purpose of the
> governmental action is punishment that may not
> constitutionally be inflicted upon detainees qua
> detainees. ...

Bell, 441 U.S. at 535-39 (citations omitted); see also Fuentes,

206 F.3d at 341-42. The Supreme Court further explained that the

government has legitimate interests that stem from its need to

maintain security and order at the detention facility. "

Restraints that are reasonably related to the institution's

interest in maintaining jail security do not, without more,

constitute unconstitutional punishment, even if they are

discomforting and are restrictions that the detainee would not

have experienced had he been released while awaiting trial." Id.

at 540. Retribution and deterrence, however, are not legitimate

nonpunitive governmental objectives. Id. at 539 n.20. Nor are

grossly exaggerated responses to genuine security considerations.

Id. at 539 n.20, 561-62.

Under this standard, plaintiff appears to have adequately

alleged that defendant Ciliento used excessive force against him

in violation of his constitutional rights under the due process

clause of the Fourteenth Amendment.  The allegations plainly infer that defendant's action in assaulting plaintiff in the manner alleged was meant to "punish" him without provocation. Plaintiff contends that he did nothing to warrant the assault and was not resisting or defying the correctional officers when the defendant "attacked" him.  Under these circumstances, if true, plaintiff may be able to demonstrate that the defendant's assault on January 15, 2004 was a grossly exaggerated response.

Moreover, it may be said that the alleged blow to plaintiff's head, which caused bruising and lacerations, is more than a *de minimis* injury.  This is a factual question that is not amenable to summary disposition at this early stage of litigation. Therefore, plaintiff's excessive force claim, based on the Due Process Clause of the Fourteenth Amendment, will be allowed to proceed.

C.  Verbal Harassment

Next, plaintiff alleges that he was subjected to verbal
harassment and racial slurs.  "Intentional harassment of even the
most hardened criminals cannot be tolerated by a civilized
society."  Hudson v. Palmer, 469 U.S. 517, 528 (1984).
Generally, mere verbal harassment does not give rise to a
constitutional violation.  See McBride v. Deer, 240 F.3d 1287,
1291 (10th Cir. 2001)(taunts and threats are not an Eighth
Amendment violation);  Oltarzewski v. Ruggiero, 830 F.2d 136 (9th
Cir. 1987); Rivera v. Goord, 119 F. Supp.2d 327, 342 (S.D.N.Y.
2000)(verbal harassment does not violate inmate's constitutional
rights); Prisoners' Legal Ass'n v. Roberson, 822 F. Supp. 185
(D.N.J. 1993); Murray v. Woodburn, 809 F. Supp. 383 (E.D. Pa.
1993); Douglas v. Marino, 684 F. Supp. 395 (D.N.J. 1988).
Racially discriminatory statements, racial slurs and epithets,
without more, also do not establish liability under § 1983.  See
Freeman v. Arpaio, 125 F.3d 732, 738 (9th Cir. 1997)(verbal abuse
directed at religious and ethnic background does not state a
cognizable constitutional violation); Black Spotted Horse v. Else
, 767 F.2d 516, 517 (8th Cir. 1985); Shabazz v. Cole, 69 F.
Supp.2d 177, 200-01 (D. Mass. 1999) ("without even a suggestion
of physical injury, [defendants'] verbal abuse and racial
epithets, although continuing for a long period of time, fall
short of conscience shocking conduct")[4]; Haussman v. Fergus, 894

F. Supp. 142, 149 (S.D.N.Y. 1995); <u>Prisoners' Legal Association</u>,
822 F. Supp. at 187-189 & n.3 (corrections officer's use of
racial slurs did not amount to constitutional violation); <u>Wright</u>
<u>v. Santoro</u>, 714 F. Supp. 665, 667 (S.D.N.Y. 1989), <u>aff'd</u>., 891
F.2d 278 (2d Cir. 1989); <u>Knop v. Johnson</u>, 667 F. Supp. 467 (W.D.
Mich. 1987), <u>appeal dismissed</u>, 841 F.2d 1126 (6th Cir. 1988).
Allegations that prison personnel have used threatening language
and gestures also are not cognizable claims under § 1983.
<u>Collins v. Cundy</u>, 603 F.2d 825 (10th Cir. 1979) (defendant
laughed at prisoner and threatened to hang him).  However,
threatening language coupled with the threatening use of a weapon
and outrageous conduct by prison personnel may indicate a
constitutional deprivation.  <u>Douglas</u>, 684 F. Supp. at 398 (the
court determined that brandishing a butcher knife in close
proximity to prisoner and threatening to kill him may amount to a
constitutional violation); <u>see also</u> <u>Northington v. Jackson</u>, 973
F.2d 1518 (10th Cir. 1992) (gun was put to prisoner's head);
<u>Burton v. Livingston</u>, 791 F.2d 97 (8th Cir. 1986)(guard
threatened to shoot prisoner).

     In the instant action, plaintiff alleges little more than
that defendant Ciliento verbally abused him by directing racial
slurs at him, and that defendant Boyce became belligerent and
verbally abusive when plaintiff complained about lack of dental
and medical care.  There are no allegations of physical threats

coupled with these derogatory slurs and harassment; nor does plaintiff claim that the harassing conduct occurred over a long period of time, or that physical injury occurred as a result of the racially-based or belligerent remarks.  Therefore, this claim will be dismissed for failure to state a claim.

D.  Access to Courts Claim

     Plaintiff also claims that he has been denied access to the courts because defendants have failed to provide an adequate law library with relevant legal materials.  He further objects to paying photocopy fees.

     Courts have recognized different constitutional sources for the right of access to the courts.  Principally, the right of access derives from the First Amendment's right to petition and the due process clauses of the Fifth and Fourteenth Amendments.[5] The right of access to the courts requires that "adequate, effective, and meaningful" access must be provided inmates who wish to challenge their criminal charge, conviction, or conditions of confinement.  Bounds v. Smith, 430 U.S. 817, 822 (1977).  In other words, prison officials must "give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the Courts."  Id. at 825.  "' [T]he touchstone ... is meaningful access to the courts.'"  Peterkin v. Jeffes, 855 F.2d 1021, 1037 (3d Cir. 1988)(quoting Bounds, 430 U.S. at 823)(internal quotation omitted).

In Bounds, the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." The right of access to the courts is not, however, unlimited. "The tools [that Bounds] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Lewis v. Casey, 518 U.S. 343, 355 (1996) (emphasis in original). Similarly, a pretrial detainee has a right of access to the courts with respect to legal assistance and participation in one's own defense against pending criminal charges. See, e.g., May v. Sheahan, 226 F.3d 876, 883-84 (7th Cir. 2000); Caldwell v. Hall, 2000 WL 343229 (E.D. Pa. March 31, 2000). But see United States v. Byrd, 208 F.3d 592, 593 (7th Cir. 2000) (pretrial detainee who rejects an offer of court- appointed counsel in satisfaction of the Sixth Amendment right to counsel has no alternative right to access to a law library); Wilson v. Blankenship, 163 F.3d 1284, 1290-91 (11th Cir. 1998) (same); United States v. Walker, 129 F.3d 1266, 1997 WL 720385, **4 (6th Cir. 1997) (same).

Moreover, a prisoner alleging a violation of his right of access must show that prison officials caused him past or imminent "actual injury" by hindering his efforts to pursue such a claim or defense.  See Lewis, 518 U.S. at 348-51, 354-55 (1996); Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997).  " He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known.  Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable to file even a complaint." Lewis, 518 U.S. at 351.

In describing the scope of services which must be provided by the state to indigent prisoners, the Supreme Court has stated, "[i]t is indisputable that indigent inmates must be provided at state expense with paper and pen to draft legal documents, with notarial services to authenticate them, and with stamps to mail them.  ...  This is not to say that economic factors may not be considered, for example, in choosing the methods used to provide meaningful access.  But the cost of protecting a constitutional right cannot justify its total denial." Bounds, 430 U.S. at 824-25, clarified on other grounds, Lewis, 518 U.S. 343.

Here, plaintiff alleges that the jail facilities do not

provide current immigration law materials in their law libraries. He does not allege that he has suffered an actual injury from the alleged inadequacy of the law library.  It is further noted that plaintiff is not precluded from filing lawsuits as this action is demonstrative of his ability to access the courts.  Thus, without allegations of an actual injury, this claim will be dismissed without prejudice.

E.   Conditions of Confinement

As noted above with respect to medical care, pretrial detainees retain at least those constitutional rights enjoyed by convicted prisoners.  This applies as well to claims regarding jail conditions.  Bell v. Wolfish, 441 U.S. at 545; Hubbard, 399 F.3d at 165-66; Natale v. Camden County Correctional Facility, 318 F.3d 575, 581-82 (3d Cir. 2003); Kost v. Kozakiewicz, 1 F.3d 176, 187-88 (3d Cir. 1993).  Analysis of whether a pre-trial detainee has been deprived of liberty without due process is governed by the standards set out by the Supreme Court in Bell v. Wolfish, 441 U.S. 520 (1979).  Fuentes, 206 F.3d at 341-42.  See also this Opinion at pages 19-21.

A conditions of confinement claim is a constitutional attack on the general conditions, practices, and restrictions of pretrial or other detainee confinement.  See Scott v. Moore, 114 F.3d 51, 53 (5th Cir. 1997).  A constitutional violation exists if the court finds that the conditions of confinement are not

reasonably related to a legitimate, non-punitive governmental objective. See Bell v. Wolfish, 441 U.S. at 538-39.

Here, at this stage of the proceedings, it would appear that plaintiff's allegations are sufficient to state a claim for "punishment" in violation of the Fourteenth Amendment. Plaintiff claims that he has been denied basic hygiene products and clothing that are mandated by the detention manual to be followed by detention facilities in contract with the BICE. He also contends that the conditions of severe overcrowding, the failure to provide medically-necessary diets, lack of adequate medical and dental care, sleeping and eating in close proximity to dirty toilets and urinals, vermin-infested cells, and leaky and falling plaster are unconstitutional conditions of confinement. As the requirements of the Eighth Amendment set a "floor" for analysis of Fourteenth Amendment due process claims, it is worth noting that denial of the "minimal civilized measure of life's necessities", Rhodes v. Chapman, 452 U.S. 337, 347 (1981), which would include basic sanitary conditions obviously lacking above, would be sufficient to state an actionable constitutional deprivation. Further, these unsafe, unsanitary and inadequate conditions do not appear reasonably related to a legitimate, non-punitive governmental objective. Therefore, this claim will be allowed to proceed as against all named defendants.[6]

F.    Lack of Grievance Procedure

Plaintiff next claims that he has been denied due process in attempting to file grievances against jail officials for the alleged conditions of confinement and for the assault that occurred on January 15, 2004.  He states that he filed a grievance with both the BICE and the Bergen County Jail administrators, and his family complained to the BICE.  An interview was conducted regarding the assault incident and plaintiff gave a sworn statement to two BICE officers.  He was told that an investigation would be conducted, but he has not heard anything about his grievance.  He claims that he is being denied his right to seek redress.

Inmates are not constitutionally entitled to a grievance procedure, and the state creation of a grievance procedure does not create a liberty interest requiring procedural protections under the Fourteenth Amendment.  See Booth v. King, 346 F. Supp.2d 751, 761 (E.D.Pa. 2004); Wilson v. Horn, 971 F. Supp. 943, 947 (E.D. Pa. 1997), aff'd, 142 F.3d 430 (3d Cir. 1998). See also Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994), cert. denied, 514 U.S. 1022 (1995); Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); Brown v. G.P. Dodson, 863 F. Supp. 284, 285 (W.D. Va. 1994).  "When the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts,

which is not compromised by the prison's refusal to entertain his grievance." Flick, 932 F.2d at 729.

Here, plaintiff has taken advantage of his right to petition the court for redress of his many grievances, including his claims of excessive force and the conditions of his confinement. Even if this Court were to accept the assertion that the defendants have not investigated plaintiff's grievance, as a matter of law, plaintiff does not have a valid claim for violation of his constitutional rights based on the allegation that there is a lack of grievance procedure for him in this matter. Thus, plaintiff's claim that his procedural due process rights were violated when the defendants failed to respond to his grievances fails as a matter of law.

G.  Unlawful Search of Cell

Plaintiff claims that the use of attack dogs to search detainees' cells violates his constitutional rights.  He complains that such searches are conducted to intimidate and terrorize the detainees.  He does not allege that any detainee has been harmed by the dogs during these routine searches.

Institutional security may necessitate the limitation of inmates' constitutional rights.  Bell v. Wolfish, 441 U.S. at 545-46.  For this reason, decisions by prison administrators regarding matters of security, discipline, and administration are accorded great deference.  Id. at 547.  Thus, when a prison regulation or practice impinges on an inmate's constitutional rights, that regulation or practice is valid if it is reasonably related to legitimate penological interests such as institutional security.  Lewis v. Casey, 518 U.S. 343, 361-62 (1996); Washington v. Harper, 494 U.S. 210, 223-24 (1990)(citing Turner v. Safley, 482 U.S. 78, 89 (1987)).

Here, the searches at issue are conducted in the cells and do not involve any physically invasive procedure.  They are clearly related to security concerns with respect to contraband and dangerous items that may be concealed by inmates (including detainees) in a confined institution.  Thus, the jail has a legitimate security concern in conducting routine searches that clearly outweighs the individual safety concern by plaintiff,

especially where the searches are not intrusive and have not
caused any actual harm towards the detainees. This claim will be
dismissed for failure to state a claim of a constitutional
deprivation.

H.   Interference with Legal Mail

Next, plaintiff alleges that Bergen County Jail officials
interfered with his legal mail on three occasions. Inmates have
a limited liberty interest in their mail under the First and
Fourteenth Amendments; thus, an inmate's constitutional right to
send and receive mail may be restricted only for legitimate
penological interests. See Thornburgh v. Abbott, 490 U.S. 401,
407 (1989); Turner v. Safley, 482 U.S. 78, 89 (1987). However, a
single interference with the delivery of an inmate's personal
mail, without more, does not rise to the level of a
constitutional deprivation. Morgan v. Montayne, 516 F.2d 1367
(2d Cir. 1975), cert. denied, 424 U.S. 973 (1976).

Plaintiff also alleges that his legal mail has been returned
to him without reason on three occasions since he arrived at the
Bergen County Jail in January 2004. These are specific instances
which may demonstrate a pattern of actual and deliberate
interference with plaintiff's mail. Consequently, at this early
stage of the proceeding, the Court will allow this claim to
proceed.

I.  Equal Protection Claim

Next, plaintiff argues a general claim that he has been denied his right to equal protection under the law, as guaranteed by the Fifth and Fourteenth Amendments, as an immigration detainee.

The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike.  City of Cleburne, Texas v. Cleburne Living Center, 473 U.S. 432, 439 (1985) (citing Plyler v. Doe, 457 U.S. 202, 216 (1982); Artway v. Attorney General of New Jersey, 81 F.3d 1235, 1267 (3d Cir. 1996).  Despite its sweeping language, though, "[t]he Equal Protection Clause does not forbid classifications.  It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike."  Nordlinger v. Hahn, 505 U.S. 1, 10 (1992).

Proof of disparate impact alone, however, is not sufficient to succeed on an equal protection claim; a plaintiff also must prove that the defendant intended to discriminate.  Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 264-66 (1977); Washington v. Davis, 426 U.S. 229, 242, 244-45 (1976).  Thus, discriminatory intent must be a motivating factor in the decision, but it need not be the sole motivating factor.  Village of Arlington Heights, 429 U.S. at 265-66.

Under this standard, the Court finds that plaintiff has
failed to articulate an equal protection violation.  Plaintiff
has not alleged that he was singled out for discriminatory
treatment different from other similarly situated prisoners.
Moreover, inmates are not members of a suspect class, and
plaintiff was not denied a fundamental right.  See Hodges v.
Klein, 562 F.2d 276 (3d Cir. 1977); Myrie v. Comm'r, N.J. Dept.
Of Corrections, 267 F.3d 251, 263 (3d Cir. 2001)(noting that
inmates, as a class, do not constitute a "discrete and insular"
minority); Abdul-Akbar v. McKelvie, 239 F.3d 307 (3d Cir.), cert.
denied 533 U.S. 953 (2001).  Therefore, the Court concludes that
plaintiff has failed to demonstrate any equal protection
violation and his claim will be dismissed pursuant to 28 U.S.C. §
1915(e)(2)(B)(ii) for failure to state a claim upon which relief
may be granted.

J.   Failure to Train and Supervise

Plaintiff also generally alleges that the named Defendants
failed to train and supervise persons working in detention
facilities as to the proper procedures and conditions for
detaining immigration detainees consistent with the BICE manual.
In general, where a plaintiff seeks to establish liability based
on a supervisor's (or municipality's) failure to train or
supervise adequately, the plaintiff must show that a need for
more or different training or supervision is so obvious, and the

inadequacy so likely to result in constitutional violations, that the failure to train or supervise can fairly be said to represent official policy. City of Canton v. Harris, 489 U.S. 378, 388-92 (1989); Stoneking v. Bradford Area School Dist., 882 F.2d 720, 724-26 (3d Cir. 1989), cert. denied, 493 U.S. 1044 (1990).

In resolving the issue of municipal or supervisory liability,

> the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the [supervisor], for the officer's shortcomings may have resulted from factors other than a faulty training program. ... Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training ... . Moreover, for liability to attach ... the identified deficiency in a city's training program must be closely related to the ultimate injury.

City of Canton, 489 U.S. at 390-91.

Here, Plaintiff contends that the named supervisory officials, both at the Bergen and Passaic County Jails and at the BICE, bear responsibility for training and supervising the conditions and treatment of immigration detainees. Because plaintiff's conditions of confinement claim is proceeding, plaintiff's allegations for failure to train and supervise with respect to the egregious conditions in the jails, should be sufficient to avoid dismissal at this preliminary stage of the litigation.

K.  State Law Claim

<u>Shabazz</u>, 69 F. Supp.2d at 200.  Consequently, plaintiff's verbal harassment claim, even if examined as a substantive due process violation, fails to state a claim upon which relief may be granted.

5   The right of access to the courts is an aspect of the First Amendment right to petition.  <u>McDonald v. Smith</u>, 472 U.S. 479, 482 (1985); <u>Bill Johnson's Restaurants, Inc. v. NLRB</u>, 461 U.S. 731, 741 (1983); <u>Milhouse v. Carlson</u>, 652 F.2d 371, 373 (3d Cir. 1981).  The Supreme Court also found that "[t]he constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights."  <u>Procunier v. Martinez</u>, 416 U.S. 396, 419 (1974), <u>overruled on other grounds</u>, <u>Thornburgh v. Abbott</u>, 490 U.S. 401, 413-14 (1989).  <u>See also</u>, <u>Hudson v. Palmer</u>, 468 U.S. 517, 523 (1984)("prisoners have the constitutional right to petition the Government for redress of their grievances, which includes a reasonable right of access to the courts"); <u>Bounds v. Smith</u>, 430 U.S. 817 (1977); <u>Wolff v. McDonnell</u>, 418 U.S. 539, 576 (1974).  The right of access to the courts might also arise under the Sixth Amendment's right to counsel; however, under the circumstances of the present case, the Sixth Amendment clearly is not implicated.

6   The BICE officials contract with the jail facilities to house and care for immigration detainees pending their removal from the United States.  Plaintiff has alleged that these defendants have sufficient knowledge about the conditions in the Passaic and Bergen County Jails that conflict with the detention manual requirements to hold them liable for unconstitutional conditions of confinement.

Finally, plaintiff asserts an assault and battery claim against CO Ciliento with respect to the assault incident of January 15, 2004.  There is no original jurisdiction over this claim because diversity between the parties under 28 U.S.C. § 1332(a) does not exist.  However, even if there is no original jurisdiction based on diversity of citizenship, the Court would be inclined to grant supplemental jurisdiction over the state law assault and battery claim, pursuant to 28 U.S.C. § 1367(a), because the claim is related to the excessive force claim over which the Court has original jurisdiction under 42 U.S.C. § 1983. Therefore, this claim will be allowed to proceed past the screening stage.

## V.   CONCLUSION

For the reasons stated above, the Court will dismiss the Complaint in its entirety, for failure to state a claim, as against the defendants the United States Department of Homeland Security and the Bureau of Immigration and Customs Enforcement. As to the remaining defendants, the Court will dismiss with prejudice plaintiff's claims alleging denial of medical care, verbal harassment, denial of grievance procedure, unlawful searches, and denial of equal protection, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim.  Plaintiff's claim asserting denial of access to the courts will be dismissed without prejudice.  The remaining claims alleging excessive

force, conditions of confinement, interference with the mail,

failure to train and supervise, and the common law claim of

assault and battery will be allowed to proceed.  An appropriate

Order follows.

_____
WILLIAM H. WALLS
United States District Judge

DATED: 3 May 2005

   1  Plaintiff submitted his Complaint for filing on or about
October 1, 2004 with an application to proceed in forma pauperis.
   2  Both Passaic County Jail and Bergen County Jail are
contract detention facilities under contract with the BICE to
house immigration detainees.
   3  Bivens actions are analogous to suits under § 1983 against
state officials who violate federal constitutional or statutory
rights.  The two bodies of law are not "precisely parallel;"
however, there is a "general trend" to incorporate § 1983 law
into Bivens suits.  Egervary v. Rooney, 80 F. Supp. 2d 491
(E.D.Pa. 2000)(citing Chin v. Bowen, 833 F.2d 21, 24 (2d Cir.
1987)).
   4  The district court in Shabazz found that plaintiff's
verbal harassment claim under the substantive component of the
Fourteenth Amendment's guarantee of due process also fails.  The
Supreme Court has recognized two alternative theories by which a
claim for denial of substantive due process is tested.  The first
theory involves "conscience shocking" behavior.  Shabazz, 69 F.
Supp.2d at 200.  The threshold for alleging a verbal harassment
claim under the conscience shocking behavior theory is very high.
Moreover, "[e]xtending the substantive component of due process
to prohibit verbal abuse between inmates and prison officials
would involve courts in the day to day operations of prisons,
[citation omitted], and weaken the deference due prison officials
in maintaining security." Shabazz, 69 F. Supp.2d at 200.  Thus,
in the instant case, where plaintiff does not allege physical
injury, the verbal abuse and racial slurs fall far short of
conscience shocking behavior, especially where he alleges only a
few and isolated incidents.  See id.

   Under the second theory, plaintiff must demonstrate a
violation of an identified liberty or property interest protected
by the due process clause.  Fear or emotional injury alone
resulting from alleged verbal abuse will not be sufficient to
constitute a violation of an identified liberty interest.